UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

T.E., individually and on behalf of C.E. a minor,                                                      Plaintiff,

v.                                                       Civil Action No. 3:22-cv-202-DJH-LLK

ANTHEM BLUE CROSS AND BLUE SHIELD et al.,                                                      Defendants.

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

Plaintiff T.E., on behalf of minor C.E., sued Defendants Anthem Health Plans of Kentucky, Inc. (named in the complaint as Anthem Blue Cross and Blue Shield), Stoll Keenon Ogden PLLC (SKO), and Stoll Keenon Ogden PLLC, Benefit Plan (the Plan) in the District of Utah after Anthem "denied claims for payment of C.E.'s medical expenses." (Docket No. 2, PageID.3 ¶ 7; *see* D.N. 33, PageID.48 (noting correct name for Anthem))  The parties then filed a stipulated motion to transfer venue to the Western District of Kentucky pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1404(a).  (D.N. 11, PageID.38)  Anthem now moves for partial dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (D.N. 33, PageID.48)  Specifically, Anthem moves to dismiss T.E.'s second cause of action, which alleges that Anthem violated the Mental Health Parity and Addiction Equity Act of 2008 (Parity Act).  (*Id.*, PageID.53)  After careful consideration, and for the reasons set out below, the partial motion to dismiss will be denied.

**I.**

The following facts are set forth in the complaint and accepted as true for purposes of the present motion.  *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020).  The Plan at

issue in this case is a "self-funded employee welfare benefits plan under" the Employee Retirement Income Security Act of 1974, or ERISA. (D.N. 2, PageID.3 ¶ 5) Anthem is an "independent licensee of the nationwide Blue Cross and Blue Shield association of providers" and at all times relevant to this case was an "agent for the Plan and SKO." (*Id.* at ¶¶ 2–3) "T.E. was a participant in the Plan[,] and C.E.," a minor, "was a beneficiary of the Plan." (*Id.* at ¶ 5) T.E. brought this action individually and on behalf of C.E. (*Id.*, PageID.2)

From a young age, "C.E. struggled with anxiety[ and] oppositional behaviors, and had difficulty focusing and staying on task." (*Id.*, PageID.4 ¶ 11) Between February and October 2020, "C.E. received medical care and treatment at Elevations/Seven Stars" which is a "licensed treatment facility" that "provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems." (*Id.*, PageID.3 ¶ 6) C.E. was admitted to Elevations "with Anthem's approval." (*Id.*, PageID.5 ¶ 14) In March 2020, however, "Anthem denied further payment for C.E.'s treatment at Elevations from March 11, 2020, forward." (*Id.* at ¶ 15)

> In its letter denying coverage, Anthem stated:
>
> The request tells us you went to a residential treatment center for your mental health condition. The program asked to extend your stay. The plan clinical criteria consider[] ongoing residential treatment medically necessary for those who are a danger to themselves or others (as shown by hearing voices telling them to harm themselves or others or persistent thoughts of harm that cannot be managed at a lower level of care). . . . The information we have reports your condition remains improved, you remain safe, you rem[ai]n medically stable, you have support, family session has been completed, and it does not show you are a danger to yourself or others. For this reason, the request is denied as not medically necessary.

(*Id.*) T.E. appealed the denial, arguing that "it was the opinion of all the clinical professionals who had treated C.E. in person that he receive treatment at the residential level of care." (*Id.*, PageID.7 ¶ 18) T.E. "took issue with the criteria Anthem utilized to evaluate C.E.'s treatment" and "pointed

2

out that these were acute level requirements and it was not appropriate to require individuals receiving subacute residential treatment care to manifest these types of symptoms." (*Id.*, PageID.8 ¶¶ 21–22) He further argued that "these types of denials violated" federal law "as Anthem did not restrict analogous medical or surgical services such as skilled nursing or hospice in this manner." (*Id.* at ¶ 23) On two separate occasions, T.E. "requested to be provided with a copy of the Plan Documents" to help substantiate his claims. (*Id.*, PageID.12 ¶ 40; *see also id.*, PageID.9 ¶ 25)

In October 2020, and again in January 2021, "Anthem upheld the denial of payment for C.E.'s treatment." (*Id.*, PageID.9 ¶ 28; *id.*, PageID.12 ¶ 41) Anthem also "failed to produce a copy of the Plan Documents, including any medically necessary criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities." (*Id.*, PageID.13 ¶ 44) T.E. sued Anthem, SKO, and the Plan in federal court for recovery of benefits and a violation of the Parity Act, requesting statutory penalties. (*Id.*, PageID.14–21) The defendants move to dismiss the Parity Act claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.N. 33) For the reasons set forth below, the Court will deny the partial motion to dismiss.

## II.

To avoid dismissal for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that he is

entitled to relief. *Id.* at 679. For purposes of a motion to dismiss, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Id.* (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). A complaint is not sufficient when it only "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted) (citing *Twombly*, 550 U.S. at 557).

In 1996, Congress passed the Parity Act in an effort to "end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans." *A.G. ex rel. N.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 839 (S.D. Ohio 2019) (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans*, 50 F. Supp. 3d 157, 160 (D. Conn. 2014)). Under the statute, a health plan must ensure that

> the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii). In other words, "[t]he Parity Act forbids ERISA group health plans from imposing more restrictive treatment limitations for mental health or substance use disorder benefits than for medical or surgical benefits." *K.K. v. Premera Blue Cross*, No. C21-1611-JCC, 2022 WL 1719134, at *2 (W.D. Wash. May 27, 2022) (citing § 1185a(a)(3)(A)(ii)). T.E. alleges that Anthem violated the Parity Act because it imposed more restrictive treatment limitations when evaluating whether to cover C.E.'s mental health treatment than it would have

4

when evaluating whether to cover comparable medical or surgical care. (*See* D.N. 2, PageID.8 ¶ 22–23)

A plaintiff may pursue two kinds of claims under the Parity Act: a facial challenge or an as-applied challenge. *See James C. v. Anthem Blue Cross & Blue Shield*, No. 2:19-CV-38, 2021 WL 2532905, at *18 (D. Utah June 21, 2021) (citing *Peter E. v. United HealthCare Servs., Inc.*, No. 2:17-cv-435, 2019 WL 3253787, at *3 (D. Utah July 19, 2019)). In a facial challenge, the plaintiff argues that a health plan violates the statute on its face, whereas in an as-applied challenge, the plaintiff argues that the plan language itself may be neutral but violates the statute in application. *Id.* T.E. clarified in his response that he is pursuing an "as-applied" Parity Act claim. (D.N. 39, PageID.218) The Court is not aware of any court in the Sixth Circuit that has considered an as-applied Parity Act claim at the motion-to-dismiss stage.[1] But district courts in Utah, which consistently hear Parity Act claims, have required plaintiffs to

> (1) identify a specific treatment limitation on mental health benefits, (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits, and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog.

*James C.*, 2021 WL 2532905 at *18 (citing *Nancy S. v. Anthem Blue Cross & Blue Shield*, No. 2:19-CV-00231-JNP-DAO, 2020 WL 2736023, at *3 (D. Utah May 26, 2020)).[2] The Court will

---

[1] *Cf. Kevin D. v. Blue Cross & Blue Shield of S.C.*, 545 F. Supp. 3d 587, 592 (W.D. Tenn. 2021) (considering a motion for judgment on the administrative record and a motion for summary judgment on a Parity Act claim); *A.G. ex rel. N.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 840 (S.D. Ohio 2019) (considering whether to dismiss a *facial* Parity Act challenge when the health plan at issue categorically excluded coverage for "wilderness camps").

[2] The parties dispute whether to use a three-part test cited by defendants or a four-part test cited by T.E. (*See* D.N. 33-1, PageID.55; D.N. 39, PageID.206–07) However, "the four-part test and the three-part test are 'materially indistinguishable, prompting only slightly different versions of the same basic question' of whether 'the ERISA plan or the claims administrator treated benefits determinations for mental health/substance abuse care less favorably.'" *Nathan W. v. Anthem*

therefore apply this three-step analysis to determine whether to grant Anthem's partial motion to dismiss.

**A.     Treatment Limitation**

To state an as-applied Parity Act claim, a plaintiff must first "identify a specific treatment limitation on mental health or substance abuse benefits." *Brian S. v. United Healthcare Ins. Co.*, No. 2:21-CV-64 TS, 2021 WL 2444664, at *2 (D. Utah June 15, 2021). A treatment limitation may be quantitative, such as limiting a patient to "50 outpatient visits per year," or it may be qualitative, such as "limit[ing] the scope or duration of benefits for treatment under a plan or coverage." *Nancy S.*, 2020 WL 2736023 at *3 (citing 20 C.F.R. § 2590.712(a)). T.E. alleges that Anthem's reviewers imposed a qualitative treatment limitation on C.E.'s mental health benefits when it "utilized acute medical necessity criteria to evaluate the non-acute treatment that C.E. received." (D.N. 2, PageID.16 ¶ 58) Essentially, T.E. argues that Anthem limited the scope of C.E.'s mental health treatment at Elevations based on whether he could satisfy "acute medical necessity criteria." (*Id.*)

District courts have "repeatedly found that an allegation that the insurance plan applied acute medical necessity requirements to the relevant mental health treatment is a sufficient factual allegation for a treatment limitation." *Brian S.*, 2021 WL 2444664 at *3 (citation omitted); *see also Nathan W.*, 2021 WL 842590 at *7 (finding that "Plaintiffs have pleaded sufficient facts to identify a specific treatment limitation" when they alleged that "Anthem's reviewers improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that [the plaintiff]

---

*Bluecross Blueshield of Wi.*, No. 220-CV-00122-JNP-JCB, 2021 WL 842590, at *6 (D. Utah Mar. 5, 2021) (quoting *Johnathan Z. v. Oxford Health Plans*, No. 2:18-CV-383, 2020 WL 607896, at *13 n.9 (D. Utah. Feb. 7, 2020)). Because the three-part test adequately frames the analysis required, the Court will apply that test. *See, e.g.*, *Patrick S.*, 516 F. Supp. 3d at 1306; *James C.*, 2021 WL 2532905 at *18; *Nathan W.*, 2021 WL 842590 at *6.

received"); *Heather E. v. Cal. Physicians' Servs.*, No. 2:19-CV-415, 2020 WL 4365500, at *3 (D. Utah July 30, 2020) (holding that a complaint alleged the first "element[] necessary to state a claim for a Parity Act violation" when it alleged that Blue Shield "evaluated the medical necessity of [the plaintiff's] treatment based on acute rather than sub-acute residential treatment criteria"). Accordingly, T.E. sufficiently identifies a treatment limitation. *See Brian S.*, 2021 WL 2444664 at *3.

To further support his allegation that Anthem improperly used "acute inpatient medical necessity criteria" when evaluating C.E.'s claim, T.E. points to Anthem's denial letter, in which Anthem wrote that C.E. was not "a danger to themselves or others (as shown by hearing voices telling them to harm themselves or others or persistent thoughts of harm that cannot be managed at a lower level of care.)" (*Id.*, PageID.16–17 ¶ 59)  In *Brian S.*, the plaintiff similarly supported its allegation that reviewers had improperly used "acute medical necessity criteria" by pointing to "language from [the insurer] that it denied coverage because [the patient] was not a risk for harm to himself or others, . . . and could continue at a lower level of care." 2021 WL 2444664 at *3. The court in that case considered the insurer's language before concluding that the plaintiff had "sufficiently allege[d] the first element of [its Parity Act] claim." *Id.*; *see also David P. v. United Healthcare Ins. Co.*, No. 2:19-CV-00225-JNP-PMW, 2020 WL 607620, at *16 (D. Utah Feb. 7, 2020) (considering that the "reviewers stated that residential treatment center care was not medically necessary for [the patient] in part because she 'did not want to hurt herself'" before concluding that "Plaintiffs sufficiently identify a specific treatment limitation"). Thus, T.E. has alleged sufficient facts to identify a treatment limitation as required by the first prong of the three-part test. *See Brian S.*, 2021 WL 2444664 at *3.

B.  **Analogous Medical/Surgical Care**

Under the second prong of a Parity Act claim, "Plaintiffs must identify medical/surgical care that is covered by the plan and is analogous to the mental health care [the patient] received." *Nancy S.*, 2020 WL 2736023 at *4. Here, the mental health care that C.E. received was inpatient treatment at Elevations: "a licensed treatment facility" that "provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems." (D.N. 2, PageID.3 ¶ 6)  T.E. alleges that "benefits offered by the Plan for medical/surgical treatment" analogous to C.E.'s treatment at Elevations "include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." (*Id.*, PageID.16 ¶ 55) Anthem argues that "Plaintiffs have failed to adequately identify medical or surgical care analogous to treatment at Elevations" because "skilled nursing facilities, inpatient hospice care, and rehabilitation facilities" amount to no more than "mere labels and broad categories." (D.N. 33-1, PageID.56–57)  The Court disagrees.

District courts have consistently held that "sub-acute residential treatment at" a mental health facility, such as Elevations, "is analogous to medical/surgical treatment at a skilled nursing or rehabilitation facility" for purposes of pleading a Parity Act claim. *See Daniel R. v. UMR*, No. 2:19-CV-00069, 2020 WL 1188144, at *7 (D. Utah Mar. 12, 2020); *see also K.K.*, 2022 WL 1719134 at *3 ("Many courts have 'consistently held' that this level of detail is sufficient to state a claim." (citing *Patrick S. v. United Behavioral Health*, 516 F. Supp. 3d 1303, 1309 (D. Utah 2021)); *Brian S.*, 2021 WL 2444664 at *3 ("[T]he question of what medical/surgical care is analogous to the type of mental health/substance abuse care for which Plaintiffs sought benefits— residential inpatient treatment—is not up for debate." (citation omitted)); *Nancy S.*, 2020 WL 2736023 at *4 ("This court has also analogized mental health/substance abuse residential treatment

centers to medical/surgical inpatient hospice and rehabilitation facilities." (citations omitted). Accordingly, the Court concludes that T.E. has sufficiently identified an analogous type of medical/surgical care and satisfied the second prong.

**C.    As-Applied Disparity**

To plead the third prong of a Parity-Act claim, "Plaintiffs must plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitation that Defendant would apply to the covered medical/surgical analogues." *Brian S.*, 2021 WL 2444664 at *3. T.E. alleges that there is a disparity between the criteria that Anthem applies to determine if a recipient qualifies for sub-acute mental health inpatient facilities, versus the criteria it applies to determine if a recipient qualifies for sub-acute medical/surgical inpatient facilities. (D.N. 2, PageID.17 ¶ 60) Specifically, he claims that "[t]he Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits." (*Id.*)

Anthem argues that "Plaintiffs fail to allege how analogous services were treated differently or more stringently than mental health services." (D.N. 33-1, PageID.57) It moves to dismiss on the ground that "Plaintiffs state only conceptually that mental health services were treated worse than other services" and "make no attempt to identify specific processes, strategies, standards, or other factors applied more stringently." (*Id.*, PageID.60) Anthem cites a number of cases to support its argument. (*See generally id.*) Some of the cases are easily distinguishable because they were decided at the summary-judgment stage (*see id.* (citing *Kevin D.*, 545 F. Supp. 3d at 592; *J.L. v. Anthem Blue Cross*, No. 2:18CV671, 2019 WL 4393318, at *1 (D. Utah Sept. 13, 2019))), or because the complaints at issue contained only the barest conclusory allegations of a disparity. (*See id.* (citing *Anne M. v. United Behav. Health*, No. 2:18-CV-808 TS, 2019 WL

9

1989644, at *3 (D. Utah May 6, 2019) (alleging that the defendant applied "criteria for mental health disorders in a more stringent way")); *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *6 (S.D. Fla. July 20, 2017) (dismissing a Parity Act claim because "the Amended Complaint is silent on the criteria used to distinguish" mental health and medical facilities and "it ignores . . . whether the criteria used . . . are in any[ ]way "more restrictive")) Anthem's remaining citations present a more difficult question.

Anthem cites a series of cases that were dismissed after the plaintiffs alleged an as-applied disparity essentially identical to the one that T.E. alleges here: that individuals receiving sub-acute inpatient treatment for medical/surgical conditions did not need to satisfy acute medical necessity criteria, while those receiving sub-acute inpatient treatment for mental health conditions did.[3] (*See* D.N. 2, PageID.17 ¶ 60) The district courts in those cases granted dismissal on the ground that the complaints contained only "conclusory and formulaic recitations of the law lacking factual support." *Jeff N.*, 2019 WL 4736920 at *4. In his response to the motion to dismiss, however, T.E. cites another line of cases where district courts concluded that allegations identical to his *were*

---

[3] (*See* D.N. 33-1 (citing *Mark C. v. United Healthcare Ins. Co.*, No. 2:20-CV-00012-DBB, 2021 WL 288578, at *3 (D. Utah Jan. 28, 2021) (dismissing based on allegations that "the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits"); *William D. v. United Healthcare Ins. Co.*, No. 2:19-CV-00590-DBB-JCB, 2020 WL 4747765, at *2 (D. Utah Aug. 17, 2020) (dismissing based on allegations that the insurer "applied acute medical necessity criteria to the subacute residential treatment while not requiring the same heightened criteria for those seeking subacute medical treatment"); *M.N. v. United Healthcare Ins.*, No. 218CV00710DBBCMR, 2020 WL 1644199, at *5 (D. Utah Apr. 2, 2020) (same); *Jeff N. v. United HealthCare Ins. Co.*, No. 2:18-CV-00710-DN-CMR, 2019 WL 4736920, at *4 (D. Utah Sept. 27, 2019) (same); *Richard K. v. United Behav. Health*, No. 18-CV-6318-GHW-BCM, 2019 WL 3083019, at *12 (S.D.N.Y. June 28, 2019), *report and recommendation adopted sub nom. Richard K. v. United Behav. Health*, No. 1:18-CV-6318-GHW, 2019 WL 3080849 (S.D.N.Y. July 15, 2019) (same); *Kerry W. v. Anthem Blue Cross & Blue Shield*, No. 2:19CV67, 2019 WL 2393802, at *4 (D. Utah June 6, 2019) (same)))

sufficient to survive dismissal. (*See* D.N. 39 (citing *Brian S.*, 2021 WL 2444664 at *8; *Heather E.*, 2020 WL 4365500 at *3; *David P.*, 2020 WL 607620 at *19; *Johnathan Z.*, 2020 WL 607896 at *19)) The disparity between the parties' citations, all of which concerned allegations essentially the same as T.E.'s, illustrates the lack of consensus on this issue. After reviewing the citations of both parties, the Court concludes that the more recent cases trend toward denying dismissal of claims such as T.E.'s and allowing them to proceed to discovery. These holdings are well-reasoned and persuasive.

In *Nathan S.*, for example, the District of Utah considered whether the plaintiffs had adequately alleged an as-applied Parity Act claim. 2021 WL 842590 at *7. Like T.E., the plaintiffs alleged that "acute criteria were applied to coverage for sub-acute mental health/substance abuse care, while acute criteria were not applied to coverage of sub-acute medical/surgical care (e.g., in a skilled nursing facility or rehabilitation center)." *Id.* The defendants argued that the complaint contained mere "conclusory allegations" insufficient to survive dismissal. *Id.* The court disagreed, finding that "Plaintiffs' allegations of a coverage disparity are sufficient to satisfy the third element of a Parity Act claim" because "the Parity Act analysis 'counsels against a rigid pleading standard.'" *Id.* at *8 (quoting *Johnathan Z.*, 2020 WL 607896 at *19). That instruction reflects "the discrepancy in information between plaintiffs and defendants, particularly related to the treatment limitations that insurers apply to analogous medical/surgical care when the insureds did not receive that care." *Id.*

The Western District of Washington reached the same conclusion in *K.K. v. Premera Blue Cross*, 2022 WL 1719134 at *3. It reasoned that "[r]equiring plaintiffs to plead more specific factual details 'would prevent any plaintiff from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled

11

nursing facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards.'" *Id.* (quoting *Melissa P. v. Aetna Life Ins. Co.*, No. 2:18-cv-00216-RJS-EJC, 2018 WL 6788521, at *3 (D. Utah Dec. 26, 2018)). In *Brian S.*, the court likewise held that "an allegation like Plaintiffs'—that a defendant insurance company applied acute medical necessity criteria to the subacute inpatient mental health treatment but does not apply the acute standard to the subacute inpatient medical/surgical analogues—is sufficient" to satisfy the third prong of the Parity Act pleading standard. 2021 WL 2444664 at *4.

The trend towards allowing Parity Act claims to proceed to discovery recognizes that information about how insurance companies process treatment limitations will often be in the hands of the insurers alone. *See Nathan S.*, 2021 WL 842590 at *7; *K.K.*, 2022 WL 1719132 at *3. Here, T.E. alleges that he "requested to be provided with a copy of the Plan Documents which would have allowed him to" substantiate his claims, "but Anthem refused or failed to provide" the documents on multiple occasions. (D.N. 2, PageID.9 ¶ 25; *id.*, PageID.10 ¶ 29; *id.*, PageID.12 ¶ 40; *id.*, PageID.17 ¶ 63) There is a "discrepancy in information," *Nathan S.*, 2021 WL 842590 at *8 (quoting *Johnathan Z.*, 2020 WL 607896 at *19), between the parties, and courts are declining to hold plaintiffs "responsible for documents and information that remain within defendants' exclusive control," especially because plaintiffs should "not be punished for not offering those facts when their repeated requests to learn the same have been ignored." *Id.* (quoting *Kurt W. v. United Healthcare Ins. Co.*, No. 2:19-cv-223, 2019 WL 6790823, at *6 (D. Utah Dec. 12, 2019)) Instead, a plaintiff must "plead as much of h[is] prima facie case as possible based on the information in h[is] possession." *Brian S.*, 2021 WL 2444664 at *4.

Consistent with the holdings reviewed above, this Court finds that T.E.'s allegations satisfy the third prong necessary to state a claim for a Parity Act violation. The Court concludes that T.E. has "plausibly alleged a coverage disparity: [Anthem's] criteria for [C.E.'s] sub-acute mental health residential care amounts to a more stringent treatment limitation than [Anthem] applies to analogous sub-acute medical/surgical care." *Nathan W.*, 2021 WL 842590 at *8.

"Based on the available information," T.E. has sufficiently identified (1) a treatment limitation, (2) an analogous medical/surgical treatment, and (3) an as-applied disparity. *David P.*, 2020 WL 607620 at *18. Accordingly, the Court concludes that T.E. has alleged all three prongs necessary to state a claim for an as-applied Parity Act violation. *See Brian S.*, 2021 WL 2444664 at *3. Anthem's partial motion to dismiss will be denied.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Anthem's partial motion to dismiss (D.N. 33) is **DENIED**.

March 24, 2023

David J. Hale, Judge
United States District Court